```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
DARRELL POWELL a/k/a DARRYL POWELL      :
a/k/a DARREL POWELL,                    :
                                        :    05 Civ. 3537 (DLC)
                        Petitioner,     :
                                        :    OPINION & ORDER
            -v-                         :
                                        :
SUPERINTENDENT WILLIAM PHILLIPS,        :
                                        :
                        Respondent.     :
                                        :
----------------------------------------X
```

Appearances:

Pro se Petitioner:
Darrell Powell
01-A-0910
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

For Respondent:
David M. Cohn
New York County District Attorney's Office
1 Hogan Place
New York , NY 10013

DENISE COTE, District Judge:

Darrell Powell ("Powell") brings this timely pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on one count of First Degree Murder. This case was referred to Magistrate Judge Michael Dolinger for a report and recommendation ("Report"). The Report was filed on December 15, 2008, and recommends that the writ be

denied.  Powell has objected to the Report.  For the following reasons, the Report is adopted, and the petition is denied.

BACKGROUND

The facts relevant to Powell's petition are set out in the Report and are summarized here.  Powell participated in a contract killing organized by Christopher Rodriguez ("Rodriguez").  Rodriguez asked Powell to arrange for the murder of Eric Caceres ("Caceres").  After Powell agreed, Rodriguez gave him a "wad" of cash and a gun.  Powell then gave the gun and $2,000 to his brother-in-law Cedric Darrett ("Darrett") to carry out the killing.  Relying on a description of the intended victim, Darrett shot and killed a man with a build similar to that of Caceres on September 11, 1997.  The victim was Freddy Pina ("Pina").

Police arrested Darrett soon after the shooting when he tried to drop the murder weapon in a nearby subway station. They showed him to the dying Pina, who identified Darrett as the shooter.  Police arrested Powell later that day and brought him to an interview room at the 34th precinct, where police told him they were investigating a shooting from the previous night. Before Powell was given his Miranda rights he said "This looks like it is serious and I think I will wait for a lawyer." Police asked him no further questions.  After Powell's cousin,

2

Rosie Powell, spoke privately to him in the interview room she told Detective Gennaro Giorgio ("Giorgio") that Powell wanted a lawyer.  Later that night, however, Powell told Giorgio that he wanted to speak to an Assistant District Attorney ("ADA").

ADA Alex Busansky came to the precinct and began interviewing Powell on videotape.  He read Powell his Miranda rights and noted that Powell had previously told both Giorgio and his cousin that he wanted to speak to an attorney, then Busansky asked if Powell wished to speak to an attorney at that time.  Powell said he did not.  He signed a waiver of his Miranda rights and confessed to his role in Pina's murder.

Before trial, Powell moved to suppress this confession, alleging it was taken in violation of his right to counsel. After holding a hearing on the motion in August 1999, Justice Leslie Crocker Snyder of the New York Supreme Court denied Powell's motion.  Justice Snyder characterized Powell's request for counsel as "equivocal," and noted that Powell had clearly waived any right to counsel after receiving his Miranda warnings.

On November 20, 2000, Powell's jury trial began in New York Supreme Court with Justice Snyder presiding.  Before jury selection began, Justice Snyder conveyed a plea offer to Powell of nine to eighteen years' imprisonment.  Powell declined.  At trial, the jury heard, inter alia, Caceres testify about the

3

drug debt Rodriguez owed him; they heard Rodriguez's friend who was with Rodriguez on the night of the shooting, Antonio Mesa ("Mesa"), describe the murder plot; they heard evidence of telephone calls between Powell, Rodriguez, and Darrett; and they heard Powell's confession.  In charging the jury, Justice Snyder repeatedly stated that the State had the burden of proving that Powell had caused Pina's death and that Powell had acted in concert with Rodriguez and Darrett in causing that death while intending to cause Caceres's death.  The jury convicted Powell.

On January 25, 2001, Justice Snyder sentenced Powell to life imprisonment without the possibility of parole.  At the sentencing hearing Justice Snyder made two sets of comments that Powell later contested: one about Powell's counsel's arguments that the same prosecutor who had made a pre-trial plea offer of nine to eighteen years was now seeking a life sentence without parole;[1] another about Powell's alleged drug dealing.[2]

---

[1] Justice Snyder said this argument was "really not fair," was "out of context," and was a "partial truth," because the circumstances at the time of the plea negotiation were different.

[2] Justice Snyder responded to defense counsel's assertions that Mr. Powell had been a law abiding individual by saying:
> I don't know of any person who is a law abiding individual who clearly was selling drugs in view of the items recovered from his home on the execution of the search warrant. . . .  So this is not a law abiding individual . . . [but someone who] sold drugs out of the home.

4

Powell appealed his conviction and sentence to the Appellate Division, First Department.  He argued that: (1) the evidence was insufficient to show he had the intent to kill Pina or that he caused Pina's death; (2) the trial court erred in refusing to charge fourth-degree criminal facilitation as a lesser included offense of the murder count; (3) the trial court erred in denying his motion to suppress his confession; (4) his trial counsel provided ineffective assistance because he failed to make a sufficiently specific dismissal motion for evidentiary insufficiency, and because he opened the door to the introduction of otherwise inadmissible inculpatory evidence; and (5) New York's first degree murder sentencing provisions infringed his right to equal protection and due process.

The Appellate Division reached the merits of Powell's appeal and affirmed his conviction and sentence.  People v. Powell, 304 A.D.2d 410 (1st Dep't 2003).  The court found the evidence warranted the conclusion that Darrett killed Pina as part of the murder scheme, and therefore the evidence was legally sufficient to establish Powell's guilt under the theory of transferred intent.  Id. at 411.  The Appellate Division held that the trial court did not err in omitting the fourth-degree criminal facilitation charge because that offense is not a lesser included offense of first degree murder under the hired killings provision.  Id.  The court found Powell's confession

5

admissible on the grounds that Powell had made only an equivocal assertion of his right to counsel, and that he later requested to speak to the assistant district attorney and clarified to that assistant district attorney that he had not invoked his right to counsel and did not wish to do so.  Id.  As for the ineffective assistance of counsel claim, the Appellate Division held that a New York Criminal Procedure Law § 440.10 motion would be required to allow trial counsel to explain his actions.  Id.  Nonetheless, the court held that on the existing record Powell had received meaningful representation.  Id.  Finally, Powell's challenge to the sentencing scheme was denied as unpreserved.  Id. at 412.

Powell sought leave to appeal to the New York Court of Appeals.  He requested review of all his claims except for his ineffective assistance of trial counsel claim and his challenge of the sentencing statute.  The Court of Appeals denied leave on December 29, 2003.  People v. Powell, 807 N.E.2d 907 (2003).  In April 2005, Powell filed a motion for a writ of error coram nobis in the Appellate Division, First Department to argue that he had received ineffective assistance of appellate counsel.  That court denied the motion without opinion.  People v. Powell, 2006 N.Y. App. Div. LEXIS 6738 (May 18, 2006), and the New York Court of Appeals denied leave to appeal on August 7, 2006.  People v. Powell, 2006 N.Y. LEXIS 3113 (Aug. 7, 2006).

Powell filed his habeas petition in this court on April 6, 2005 and an amended petition on December 4, 2006. Powell's petition reasserts the basic claims he made to the Appellate Division. Powell does not assert the ineffective assistance of trial counsel claim he made in state court, but he adds his ineffective assistance of appellate counsel claim.

DISCUSSION

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court must make a de novo determination of the portions of the report to which petitioner objects. 28 U.S.C. § 636(b)(1); see United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Figueroa v. Riverbay Corp., No. 06 Civ. 5364(PAC), 2006 WL 3804581, at *1 (S.D.N.Y. Dec. 22, 2006) (citation omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, modified the standard under which federal courts review Section 2254 petitions where the state court has reached the merits of the federal claim. Habeas relief may not be granted unless the

7

state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1), (d)(2).  State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id. at § 2254(e)(1).

I. Exhausted Claims
A. Insufficiency of the Evidence

     Powell contends that the jury lacked sufficient evidence to convict him of Pina's murder.  He argues that since he hired Darrett to kill someone else, he cannot be said to have had the necessary intent to cause Pina's death.  Furthermore, Powell argues that there is no way of knowing whether Darrett shot Pina in furtherance of the murder scheme in which Powell was involved or whether Darrett shot Pina in furtherance of Darrett's own, separate agenda.  The Report correctly notes that under Jackson v. Virginia, 443 U.S. 307 (1979), a federal habeas court may grant relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. at 324.  A federal court therefore "does not focus on whether the trier of

fact made the <u>correct</u> guilt or innocence determination, but rather whether it made a <u>rational</u> decision to convict or acquit." <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993). Considering this standard, the Report correctly concludes that the trial record contained sufficient evidence to support Powell's conviction.  The Report also correctly concludes that Powell's challenge to his conviction on the ground that the wrong person was killed is unavailing because New York Penal Law § 125.27 explicitly allows for conviction of a defendant on a transferred intent theory.[3]

    Powell's objections to the Report on this point merely restate the arguments he made in his original petition.  The trial testimony of Caceres, Mesa, and police officers, as well as Powell's confession showed that: Powell had participated in a contract killing scheme; he gave Darrett money and a gun to kill Caceres; Darrett then killed someone who fit Darrett's understanding of what Caceres looked like and where Caceres

---

[3] New York Penal Law § 125.27 provides:
    A person is guilty of murder in the first degree
    when: 1. With intent to cause the death of another
    person, he causes the death of such person or of a
    third person; and . . . (vi) the defendant committed
    the killing or procured commission of the killing
    pursuant to an agreement with a person other than the
    intended victim to commit the same for the receipt,
    or in expectation of the receipt, of anything of
    pecuniary value from a party to the agreement or from
    a person other than the intended victim acting at the
    direction of a party to such agreement.

would be; and the victim turned out to be Pina.  Powell's argument therefore fails and his petition is denied on this claim.

B. Ineffective Assistance of Appellate Counsel

Powell claims that his appellate counsel provided ineffective assistance.  He complains that in the course of arguing to the Appellate Division that Powell had been denied effective trial counsel, his appellate counsel failed to raise two errors the trial attorney made: (1) that the trial attorney failed to object at the sentencing hearing to Justice Snyder's comments about the arguments Powell's counsel made about the disparity in the prosecutor's sentencing recommendations; and (2) that the trial attorney failed to object to the jury instruction that allowed Powell to be convicted of first degree murder on a theory of transferred intent.  The Report correctly concludes that neither claim satisfied the standard for ineffective assistance of appellate counsel set out in Jones v. Barnes, 463 U.S. 745 (1983).  Under this standard, appellate counsel are given considerable latitude to select which arguments to raise on appeal.  Id. at 751-52.  Powell did not object to these conclusions.  Finding no clear error with the Report, Powell's ineffective assistance claims on these grounds is denied.

Powell's only objection to the Report's discussion of his claim that his appellate counsel was ineffective focuses on the Report's discussion of the comments Justice Snyder made at the sentencing hearing about Powell's alleged drug dealing. He alleges that the court's sentence was "based on the erroneous conjecture that [he] dealt drugs from his home" and disputes that he used his home as a "retail drug spot." He complains that appellate counsel did not raise his trial counsel's omission of this argument. Appellate counsel's choice not to raise this omission did not fall outside the wide boundaries of Jones v. Barnes. Powell's petition is therefore denied on this claim.

C. Failure to Charge Jury on Lesser Included Offense

Powell argues that the trial court denied him a fair trial because it failed to instruct the jury on fourth-degree criminal facilitation as a lesser included offense of first degree murder. The Report rejects this argument because criminal facilitation is not a lesser included offense of first degree murder based on a contract killing. In addition, the Supreme Court has expressly reserved decision on the question of whether the Due Process Clause requires that a jury be given a lesser included offense instruction in non-capital cases. Beck v. Alabama, 447 U.S. 625, 637-38 (1980). Powell does not object

11

to this part of the Report.  Finding no clear error in the Report's analysis, this claim is rejected.

D. Failure to Suppress Confession

Powell argues that the Appellate Division erred in finding his videotaped confession admissible.  He claims that the confession was taken in violation of his right to counsel, and its admission therefore violated his right to a fair trial.  The Report correctly concludes that the Appellate Division's decision was entirely consistent with the Supreme Court holding that questioning may resume after a suspect requests an attorney if the suspect "initiates further communication, exchanges, or conversations with the police."  Arizona v. Mauro, 481 U.S. 520, 525-26 (1987) (citation omitted).  Powell did not object to this portion of the Report.  Finding no clear error in the Report's reasoning, this claim is denied.

II. Unexhausted Claim

Powell argues that the statute under which he was sentenced denied him equal protection and due process.  The Report correctly finds that the claim was procedurally waived.  N.Y. Crim. Proc. Law § 470.05(2); see also Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999).  Noting that habeas review of a procedurally defaulted claim may occur only if the petitioner shows cause for the default and prejudice, or if he shows that

12

failure to consider his claims will result in a fundamental miscarriage of justice, Coleman v. Thompson, 501 U.S. 722, 750 (1991), the Report finds that Powell did not make a sufficient showing on this point. Powell did not object to this part of the Report. Finding no clear error with the Report's reasoning, the claim is denied.

CONCLUSION

The December 15, 2008 recommendation of Magistrate Judge Dolinger is adopted and the petition for a writ of habeas corpus is denied. In addition, the Court declines to issue a certificate of appealability. Powell has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005). The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962). The Clerk of Court shall dismiss this petition and close the case.

SO ORDERED:

Dated:   New York, New York
         April 7, 2009

_____
DENISE COTE
United States District Judge

COPIES SENT TO:

Darryl Powell  
01-A-0910  
Green Haven Correctional Facility  
P.O. Box 4000  
Stormville, NY 12582

David M. Cohn, Esq.  
New York County District Attorney's Office  
1 Hogan Place  
New York, NY 11013

Magistrate Judge Dolinger